**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**OLIVIA HUNTER,**                                      CASE NO. 3:24 CV 316

      Plaintiff,

      v.                                              JUDGE JAMES R. KNEPP II

**SOUTHERN HEALTH PARTNERS, et al.,**
                                                       **MEMORANDUM OPINION AND**
      Defendants.                                 **ORDER**

### INTRODUCTION

Pending before the Court is Defendants Southern Health Partners, Anas Alzuhaili, MD,[1] Thomas West, Travis Geahlen, Rachel Smith, and Brittani Heller's (hereinafter "Defendants")[2] Motion for Judgment on the Pleadings. (Doc. 54). Plaintiff opposed the Motion (Doc. 56), and Defendants replied (Doc. 58). Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons discussed below, the Court grants in part and denies in part Defendants' Motion as to Count I, denies the Motion as to Count III, and grants the Motion as to Counts II & IV.[3]

---

1. The Complaint initially refers to this Defendant as Dr. Anas Alzyhaili, but subsequently changes the spelling to "Alzuhaili." *See* Doc. 1, at 1, 4. Defendants' Motion spells the doctor's name initially as "Al Zuhaili," but subsequently,"Alzuhaili." *See, e.g.*, Doc. 54, at 1, 3. The Court uses "Alzuhaili" herein, as it is the spelling most frequently used by both parties.
2. Plaintiff originally also sued Defendant Jeffrey Bernfield (a medical radiologist) and his employer TridentCare Imaging, along with Lucas County. These Defendants have since been dismissed. *See* Docs. 40, 42.
3. Count IV is mislabeled in the Complaint as Count VIII. The Court refers to it as Count IV herein.

## BACKGROUND

Well-pled factual allegations in the Complaint are accepted as true for purposes of a motion for judgment on the pleadings. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). The factual allegations relevant to this Motion are set forth below.

This case stems from allegedly deficient medical care Plaintiff experienced during her time as an inmate in the Corrections Center of Northwest Ohio ("CCNO") where she was housed in the mental health ward. (Doc. 1, at 6). CCNO subcontracted with Southern Health Partners ("SHP") to provide medical care to inmates during the relevant time. *Id.* at 4. Dr. Alzuhaili was the medical director at CCNO, employed by SHP. *Id.*; *see also* Doc. 54, at 3. Defendants Heller, Geahlen, West, and Smith were medical professionals at CCNO and employed by SHP. (Doc. 1, at 4).

During Plaintiff's incarceration from April 15, 2022, through May 30, 2022,[4] she experienced severe stomach pains and constipation. *Id.* at 6. Plaintiff alleges Defendants expressed indifference to her medical needs and alleged she faked her complaints, causing her to suffer immense pain and discomfort. *Id.* at 6, 9. Plaintiff further alleges the mental health ward maintained a practice of understaffing and not providing medical staff capable of addressing inmates' non-psychiatric needs. *Id.* at 15. Upon Plaintiff's release from CCNO, she went directly to the hospital where she required emergency surgery for a cancerous mass in her colon. *Id.* at 9. Such surgery resulted in a permanent colostomy bag; she alleges if CCNO had properly treated her, a less invasive surgery could have been performed. *Id.*

---

4. The Complaint initially states Plaintiff was an inmate until May 30, 2022, but later indicates she was released on or about May 15, 2022. *See* Doc. 1, at 6, 9. Defendants do not contest Plaintiff was in custody for approximately 46 days, which appears to align with the May 30 date. (Doc. 54, at 3).

Remaining in this case are four Counts against Defendants: failure to protect and denial of medical care under the Fourteenth Amendment against all Defendants (Count I); supervisory liability under the Fourteenth Amendment against Dr. Alzuhaili (Count II); municipal liability under the Fourteenth Amendment against SHP (Count III); and vicarious liability against SHP (Count IV). *See* Doc. 1, at 12–18.

### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgement on the pleadings." Fed. R. Civ. P. 12(c). "For purposes of a motion for judgement on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgement." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Oh. Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgement on the pleadings. *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). Thus, a claim survives a motion for judgment on the pleadings if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544. 570 (2007)). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

3

**DISCUSSION**

Defendants' Motion presents two arguments. First, Defendants contend Plaintiff does not plead facts to plausibly allege the subjective prong of an Eighth Amendment medical indifference claim. (Doc. 54, at 6). Second, Defendants assert the supervisory, municipal, and vicarious liability claims are derivative and fail without an underlying constitutional claim. *Id.* at 11.

Count I: Deliberate Indifference to Medical Needs

Plaintiff alleges Defendants acted with deliberate indifference to her serious medical needs in violation of the Fourteenth Amendment. *See* Doc. 1, at 17. In seeking judgment on the pleadings, Defendants argue Plaintiff was a post-conviction detainee during the relevant time, making her claims fall under the Eighth Amendment and requiring application of a more stringent pleading standard. *See* Doc. 54, at 4.

Plaintiff did not plead her custodial status. But this Court may take judicial notice that she was a post-conviction detainee when the claim arose, and it does so. Fed. R. Evid. 201(b) ("[t]the court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see State of Ohio v. Olivia Hunter*, Lucas Cnty. Ct. of C. P., Case No. G-4801-CR-0201802498-000 (April 13, 2022) ("[T]he Court orders that defendant be committed to the Corrections Center of Northwest Ohio for a period of 180 days as to each count until released according to law.").

But Plaintiff's claim falling under an Amendment different than plead in her Complaint does not require dismissal thereof.[5] Thus, this Court will analyze her claim under the Eighth Amendment standard.

An inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to serious medical needs since the same constitutes cruel and unusual punishment under the Eighth Amendment. *See generally Estelle v. Gamble*, 429 U.S. 97 (1976). Such an Eighth Amendment claim has both an objective and a subjective component. *Richmond v. Huq*, 885 F.3d 928, 937–38 (6th Cir. 2018). The objective component requires the deprivation be "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).[6] To satisfy the subjective prong at this stage, Plaintiff must allege each Defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). "[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock*, 273 F.3d at 703 (citing *Estelle*, 429 U.S. at 106); *see also Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005) (explaining each defendant's subjective knowledge should be assessed separately, and information available to one defendant may not be automatically imputed to the others).

---

5. Plaintiff, in her opposition, requests leave to amend her Complaint to cure this defect. (Doc. 56, at 5). To grant such request is unnecessary, as the Court analyzes the Complaint's substance, not the heading under which it rests. *See Gean v. Hattaway*, 330 F.3d 758, 765 (6th Cir. 2003) ("The form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim.") (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 604 (5th Cir. 1981)) (citation modified).

6. Defendants do not dispute Plaintiff meets the objective prong. *See* Doc. 58, at 2 (recognizing colon cancer is an "objectively serious medical need" and concluding "[t]he objective prong is satisfied.").

*Defendants West, Heller, Smith, and Geahlen*

The Complaint details multiple specific instances from which the Court can infer Defendants West, Heller, Smith, and Geahlen's subjective knowledge of a serious risk. During intake Plaintiff informed the medical staff of her previous battle with breast cancer. (Doc. 1, at 6). From April 27, 2022, until May 11, 2022, Plaintiff details repeated complaints of severe abdominal issues with little to no action from the medical providers. *Id.* at 6–9. She specifically asserts she "was given a hodgepodge of over-the-counter stomach medication," was "never treated for severe stomach pains," and "never given a proper abdominal examination by medical staff." *Id.* at 6. Plaintiff details the chronology of complaints she made to staff as follows:

    a.  On April 27, 2022, Plaintiff filed a sick call slip because she could not move her bowels.

    b.  On April 28, 2022, Plaintiff complained to Defendant Thomas West that she was not able to have regular bowel movements for approximately nine days. She claimed she was in severe pain. Plaintiff was deemed a faker and sent back to her cell.

    c.  On April 29, 2022, Plaintiff complained to Defendant [G]eahlen regarding stomach pain and her inability to move her bowels.

    d.  Later, on April 29, 2022, Plaintiff was seen by Defendant Rachel Smith and complained of no bowel movements for at least ten days. Plaintiff was given [D]ucola[x] and milk of magnesia.

    e.  On May 1, 2022, Defendant Rachel Smith noted Plaintiff had not moved her bowels for 12 days, but took no action. Plaintiff was in severe pain.

    f.  On May 2, 2022, Plaintiff submitted a sick call clip that she had not moved her bowels in over two weeks. Plaintiff was in severe pain.

    g.  On May 2, 2022, Plaintiff complained to Defendant Geahlen that she had been constipated for 15 days and was not given any medical care for her abdominal pain; Plaintiff complained her abdominal pain level was 10 out of 10.

    h.  However, later that same day, Defendant Heller claimed Plaintiff moved her bowels in her presence.

i. On May 2, 2022, Defendant Heller canceled a scheduled radiographic film appointment of Plaintiff's because she believed Plaintiff had moved her bowels and had been faking her abdominal pain.

j. On May 4, 2022, Plaintiff again complained of abdominal pain, and her complaints were generally ignored.

k. On May 5, 2022, Plaintiff complained to Defendant Heller about bowel pains, but Defendant Heller labeled Plaintiff a faker and claimed Plaintiff had a bowel movement when she did not. Plaintiff was in sever[e] pain and not given any treatment for her abdominal complaints.

l. On a sick call slip dated April 7, 2022 (based upon information and believe the slip was submitted on May 7, 2022), Plaintiff submitted a sick call slip for unbearable stomach pain.

m. On May 10, 2022, Plaintiff complained of abdominal pain and constipation to Geahlen. Plaintiff was in severe pain and not given any treatment for her abdominal complaints.

n. On May 11, 2022, Plaintiff complained about severe abdominal pain to Defendant Geahlen. Plaintiff was in severe pain and was not given any treatment for her abdominal complaints.

*Id.* at 7–9.

Plaintiff specifically alleges Defendants West and Heller received complaints from Plaintiff yet dismissed her as a "faker" and took no action to address her complaints, with Heller going so far as to cancel a scheduled diagnostic test. *Id.* at 8. The Complaint further states Defendant Geahlen likewise learned of the severity of Plaintiff's condition, received repeated complaints, and failed to render any care. *Id.* at 7–9. Defendants contend Defendant Smith provided medical care on April 29 by giving her Dulcolax and milk of magnesia. *See* Doc. 54, at 3; Doc. 1, at 8. That said, the Complaint alleges Smith was made aware problems persisted and Plaintiff had not had bowel movements in twelve days; no action was taken. *See* Doc. 1, at 8.

Medical professionals may be liable if they disregard a substantial risk of serious harm "by failing to take reasonable measures to abate it." *Framer v. Brennan*, 511 U.S. 825, 848 (1994); *see*

7

*also Ham v. Marshall Cnty.*, 2013 WL 6017441, at \*7 (W.D. Ky.) ("A prison official may be found deliberately indifferent event after seeking medical treatment for an inmate when, confronted with 'continued complaints by [an inmate]' or 'manifest symptoms' of a continuing serious condition, the prison official nonetheless fails to seek additional medical attention.") (citation modified). Considering the Complaint asserts Plaintiff repeatedly complained about ongoing symptoms, was rendered little or no care by medical staff in response, and informed staff of a previous cancer, it is reasonable for this Court to infer her complaints warranted greater attention from these medical staff.

The allegations in the Complaint, taken as true, plausibly support a claim under the Eighth Amendment deliberate indifference standard as to Defendants West, Heller, Smith, and Geahlen. At this stage, Plaintiff need not prove her case but need only plead facts from which a "reasonable inference" of liability may be drawn as to Defendants. *See Iqbal*, 556 U.S. at 678. One could fairly infer Plaintiff's inability to move her bowels or her constant abdominal pain were "obvious" risks requiring treatment. *See Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 569 (6th Cir. 2013) (reasoning subjective knowledge "can be inferred from the obviousness of the harm stemming from the risk"). And the more substantive, specific questions of who knew what and when they knew it are better left for determination at the summary judgment stage, where detail beyond what is required by Plaintiff's initial pleadings can be parsed out.[7]

*Defendant Dr. Alzuhaili*

The Court reaches a different conclusion as to Dr. Alzuhaili.

---

[7]. The Court notes that in the time this Motion has been pending, Defendants have filed a Motion for Summary Judgment (Doc. 70) as well as a Motion to Strike Expert Testimony (Doc. 60). Those Motions will be decided in due course.

As to Dr. Alzuhaili, Plaintiff's Complaint alleges that at some point, Dr. Alzuhaili ordered a stomach x-ray for Plaintiff and the x-ray was "misread" by third-party subcontractor.[8] (Doc. 1, at 7). The Complaint further alleges Dr. Alzuhaili never followed up on the x-ray report and did not provide any additional medical care or evaluation. *Id.* at 9. But Defendants contend Dr. Alzuhaili ordered and relied on the results from the x-ray to address Plaintiff's complaints and was therefore not indifferent to Plaintiff's medical needs. (Doc. 54, at 3, 6). This Court agrees.

Plaintiff identifies no further conduct by or interactions with Dr. Alzuhaili, and merely alleges he ordered an x-ray, received unremarkable results, and failed to follow up. The Complaint does not allege knowledge on his part of Plaintiff's continuing abdominal pain after the x-ray was rendered, nor does it state any reason why reliance on the imaging results would reflect a disregard of a substantial risk. "As a general rule, a patient's disagreement with his course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darby v. May*, 2020 WL 1514602, at *2 (N.D. Ohio 2020) (quoting *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017)); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). Without more, the Complaint provides no reason for this Court to infer Dr. Alzuhaili was aware of a substantial risk after the x-ray. Thus, Dr. Alzuhaili is entitled to dismissal.

---

8. The third-party contractor, who has been dismissed from this action, reported: "Non-Specific gas pattern. No evidence for obstruction or free air. Mild stool is present within the colon. Osseous structures are unremarkable. No dystrophic appearing calcifications. Conclusion: Unremarkable, non-obstructive bowel gas pattern." (Doc. 1, at 7).

As such, Defendants' Motion for Judgment on the Pleadings as to Count I is granted in part as to Dr. Alzuhaili and denied as to all other Defendants.

Count III: Municipal Liability

Defendants argue Count III should be dismissed because no underlying constitutional violation exists. (Doc. 54, at 10–11). As discussed above, Count I plausibly alleges a deprivation of Plaintiff's rights under the Eighth Amendment as to certain Defendants. Thus, Count III is supported by an underlying allegation of a constitutional violation.

Defendants alternatively argue Count III fails because it is based on "nothing more than conclusory allegations of a failure to train, or that an unidentified policy or custom caused Plaintiff's injuries." *Id.* at 11. Defendants are correct that, at this stage, Plaintiff must plead specific facts beyond speculation or a bare recitation of municipal liability. *Romero v. City of Lansing*, 159 F.4th 1002, 1015 (6th Cir. 2025). But Plaintiff meets this standard.

To state a § 1983 claim against SHP, Plaintiff must plausibly allege "the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). A municipality's illegal policy or custom can be shown by: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* at 478. Plaintiff need not establish every avenue of municipal liability, proof of one suffices.

In cases where no formal policy exists, "the critical question is whether there is a particular custom or practice that 'although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" *Jones v.*

10

*Muskegon Cnty.*, 625 F.3d 935, 946 (6th Cir. 2010) (quoting *McClendon v. City of Detroit*, 255 F. App'x 980, 982 (6th Cir. 2007)).

The Complaint alleges SHP maintained a practice of understaffing the ward where Plaintiff was housed, leaving inmates without access to medical professionals capable of addressing non-psychiatric medical needs. (Doc. 1, at 15). Plaintiff further alleges SHP's policies permitted staff to conduct rounds from outside cell doors, bypassing entry required for meaningful examination and evaluation of inmates. *Id.* She also asserts behavioral health providers followed a custom of dismissing inmate complaints in the mental health ward, treating physical symptoms as somatic or psychosomatic without investigation. *Id.* at 16.

Taken together, the allegations plausibly support the existence of a custom or practice governing how SHP responded to inmate medical needs. *See Duka v. Lake Cnty.*, 2014 WL 1761949, at *5 (N.D. Ohio) (holding "Plaintiff has alleged enough in Count Three to survive a motion to dismiss the *Monell* claim given that he has alleged that Lake County had an unwritten policy of withholding medically necessary treatment and has adopted a custom of such withholding"). At this stage Plaintiff need not prove the policy or custom, she must only plausibly allege one. She has done so.

Counts II & IV: Supervisory Liability & Vicarious Liability

Defendants argue Count II fails to establish respondeat superior liability against Dr. Alzuhaili, contending the Complaint merely alleges his failure to act. Plaintiff agrees. (Doc. 56, at 17). Defendants further contend § 1983 does not support a claim for vicarious liability, requiring Count IV be dismissed. (Doc. 54, at 11). Plaintiff agrees. (Doc. 56, at 19). As such, Counts II and IV are dismissed.

11

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion for Judgment on the Pleadings (Doc. 54) be, and the

same hereby is, GRANTED in part on Count I as to Dr. Alzuhaili, but denied as to Defendants

West, Heller, Smith, and Geahlen; DENIED as to Count III; and GRANTED as to Counts II & IV.


 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: March 13, 2026

12