**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**OLIVIA HUNTER,**

Plaintiff,

v.

**SOUTHERN HEALTH PARTNERS, et al.,**

Defendants.

CASE NO. 3:24 CV 316

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

Currently pending in this civil rights action is a Motion for Summary Judgment filed by Defendants Thomas West, Travis Geahlen, Rachel Smith, Brittani Heller, and Southern Health Partners (collectively, "Defendants"). (Docs. 66, 70).[1] Plaintiff Olivia Hunter opposes. (Doc. 73). Defendants reply. (Doc. 74).[2] Also pending is Plaintiff's Motion to Strike Defendants' Expert Testimony (Docs. 60, 61). Defendants oppose the Motion to Strike, and Plaintiff replies. (Docs. 62, 63). Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons set forth below, Defendants' Motion for Summary Judgment is granted and Plaintiff's Motion to Strike is denied as moot.

1. Two identical Motions for Summary Judgment were filed with the Court. *Compare* Doc. 66 *with* Doc. 70. Defendants address the two filings as one, as does the Court.
2. Plaintiff also filed a motion for leave to file sur-reply. (Doc. 75). The proposed sur-reply merely reiterates arguments Plaintiff raised in opposition and does not address new arguments raised for the first time in Defendants' reply. Therefore, the Court finds a sur-reply not appropriate and denies Plaintiff's motion for leave. *See Conteers LLC v. City of Akron*, 2021 WL 252540 (N.D. Ohio 2021) (explaining sur-replies may be appropriate when a reply raises new arguments or evidence).

## BACKGROUND

Plaintiff brought this action pursuant to 42 U.S.C. § 1983, alleging the individual Defendants acted with deliberate indifference to her serious medical needs in violation of the Eighth Amendment.[3] (Doc. 1 at 12-13). She also brought a *Monell* claim against Southern Health Partners. *Id.* at 15-17. The remaining individual Defendants are Nurse Practitioner Brittani Heller and Licensed Practical Nurses Thomas West, Travis Geahlen, and Rachel Smith, all of whom treated Plaintiff during the course of her incarceration. *See generally* Doc. 67; *see* Doc. 70-2, at 4-6, 43; Doc. 70-3, at 4-6; Doc. 70-4, at 5. Specifically, Plaintiff alleges Defendants did not properly address numerous complaints pertaining to her inability to have a bowel movement during the 46 days she was incarcerated at Correction Center of Northwest Ohio ("CCNO"). (Doc. 70-1, at 38-44). The medical records from Plaintiff's 46-day stay at CCNO are extensive. *See* Doc. 67. The Court therefore addresses only those encounters with medical personnel relevant to the claims at issue.

Plaintiff's deposition testimony concerning her medical treatment was generally not date-specific and did not identify which medical personnel treated her on particular dates. *See generally* Doc. 70-1. She testified she went to the medical unit approximately seven times, explaining: "How many times I went down there after all the times I complained? Probably about seven times . . . [a]nd every time I would go down there, they would put me in that room on the floor and leave me there for seven days at a time." *Id.* at 39. When asked whether medical staff checked on her while she in the medical unit, Plaintiff initially testified staff checked on her only once a week. *Id.* at 40. She later testified, however, she could knock on the window to get staff's attention, had access to

3. Although Plaintiff originally brought her claim under the Fourteenth Amendment, the Court previously determined it was properly analyzed under Eighth Amendment standards. (Doc. 76, at 5).

a tablet through which she could report her symptoms, and received checks from medical staff during the day. *Id.* at 40-41. Although Plaintiff generally testified she did not have a bowel movement at any point during her 46-day incarceration, she did not identify specific dates on which she communicated that information or which medical personnel she told. Doc. 70-1 at 31-32; *See id.* The contemporaneous Sick Call Slips, however, document particular dates on which Plaintiff reported how long it had been since her last bowel movement. *See, e.g.* Doc. 67. at 338.

On April 13, 2022, Plaintiff was booked into CCNO to serve a 46-day sentence. (*Id.* at 30; Doc. 70-1 at 78). The following day, Defendant Geahlen saw Plaintiff after she reported nausea, shaking, and vomiting associated with withdrawal. Doc 67 at 312. Geahlen performed a physical examination and provided Gatorade and Zofran. *Id.*

On April 15, 2022, Plaintiff filled out a Sick Call Slip complaining she had experienced diarrhea for two days. *Id.* at 363. At her deposition, Plaintiff acknowledged signing the slip and telling medical staff she had diarrhea but testified that she actually meant she was *not* having diarrhea. (Doc. 70-1, at 65). Defendant West gave her medication to address diarrhea symptoms. (Doc. 67, at 363).

On April 21, Defendant Geahlen performed an admission medical screening that included an abdominal exam, which documented no abdominal distention. *Id.* at 202-03. Laboratory testing was also obtained in connection with Plaintiff's ongoing diarrhea, and Defendant Heller reviewed the test results with Plaintiff the following day. *Id.* at 244-46, 296. The only identified abnormality was a potassium deficiency, for which Plaintiff was advised to increase her potassium intake. *Id.*

On April 27, Plaintiff wrote on a Sick Call Slip that she "still can[']t sleep or poop" and in response to the question, "How long have you had this problem?" wrote "4-19-22." *Id.* at 338. A nurse who is not a Defendant in this suit prescribed medication to address the issue. *Id.*

Over the next two days, Plaintiff continued to complain of constipation. On April 28, West examined her after she reported abdominal pain and no regular bowel movement for approximately nine days. *Id.* at 288. West noted left lower-quadrant tenderness, administered medication to address the constipation, and instructed Plaintiff to reach out to medical "if complaint does not resolve." *Id.* The following day, Smith evaluated Plaintiff after she reported no bowel movement for ten days and administered medication for constipation; Geahlen also saw her later that day and continued her constipation treatment. *Id.* at 286, 248.

On April 30, Smith again evaluated Plaintiff after she reported no bowel movement for twelve days and administered medication for constipation. *Id.* at 78. On May 2, Plaintiff filled out another Sick Call Slip stating she had not had a bowel movement for over two weeks. *Id.* at 334. During the examination, Plaintiff reported 10/10 abdominal pain, and Geahlen documented a nondistended abdomen. *Id.* at 280. Geahlen ordered an abdominal x-ray and administered medication to address Plaintiff's constipation. *Id*. In the same note, Heller cancelled the abdominal x-ray. *Id.* Plaintiff denies ever telling medical staff she had a bowel movement and maintains she did not have one during the entire 46-day period. (Doc. 70-1, at 31-32, 43).

On May 4 and 5, while housed in the medical unit, Plaintiff was evaluated by West, Geahlen, and Heller. (Doc. 67, at 221, 274, 276). The medical records from those encounters state Plaintiff reported having regular bowel movements which, again, Plaintiff broadly denies. *Id.* at 274, 276; Doc. 70-1, at 31, 43.

On May 7, Plaintiff filled out another kite stating, "unb[e]arable pain still in my stomach [,] would [like] to see a doctor for [ultrasound]." (Doc. 67, at 330). She indicated that she had been experiencing the problem for a "few day's [sic]." *Id.* A nurse addressed the complaint by referring Plaintiff to a physician. *Id.*

On May 9, Plaintiff submitted a Sick Call Slip complaining of a headache. *Id.* at 327. West saw Plaintiff and gave her medication to address the complaint. *Id*. On May 10, Geahlen saw Plaintiff for ongoing constipation, and another x-ray was ordered. *Id.* at 272. The next day, Plaintiff filed another Sick Call Slip and stated she needed a laxative instead of stool softener. *Id.* at 323. The radiology report, received by Heller and Geahlen, noted a nonspecific gas pattern, no evidence of obstruction or free air, and mild stool within the colon. *Id.* at 376. It concluded: "Unremarkable, nonobstructive bowel gas pattern." *Id.*

On May 14, West observed Plaintiff in the medical unit, documented that she denied further complaints of abdominal pain, and noted that she wanted to return to her unit. *Id.* at 215. The final documented medical-unit encounter occurred on May 16, when Heller conducted a follow-up examination and returned Plaintiff to her unit. *Id.* at 262. No further complaints of abdominal pain or constipation are reflected in the CCNO medical record after the May 11 x-ray, and Plaintiff does not specifically identify any such complaint made after that date. *See generally* Doc. 67; Doc. 70-1.

Plaintiff was released from CCNO on May 29, eighteen days later. (Doc. 70-1 at 79). The day she was released, Plaintiff was diagnosed with a colon mass, partial small bowel obstruction, and a perforated colon. (Doc. 68, at 798). She underwent surgery the following day that resulted in a colostomy, and pathology later confirmed the presence of colon cancer. (Doc. 68 at 688).

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any factual matter in dispute; the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials"); *see also* Fed. R. Civ. P. 56(e) (identifying a court's options when a party fails to properly support an assertion of fact). The Court will not consider factual statements in that brief that are either (1) not supported by any citation to the record, or (2) not supported by the record citation listed. *See Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) ("'[J]udges are not like pigs, hunting for truffles' that might be buried in the record.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

**DISCUSSION**

Defendants contend they are entitled to summary judgment on Plaintiff's Eighth Amendment claim because there is no genuine dispute of material fact as to the subjective component of deliberate indifference. (Doc. 66). They further contend Plaintiff has presented no evidence of a policy or custom sufficient to support her *Monell* claim. (Doc. 66 at 16).

For the reasons set forth below, the Court agrees and grants summary judgment in favor of all Defendants on Plaintiff's Eighth Amendment claims, including her *Monell* claim against SHP, and denies Plaintiff's Motion to Strike as moot.

Deliberate Indifference

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. In the context of a prisoner's medical needs, the Amendment imposes an obligation on the government to provide medical care to those whom it incarcerates. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). A claim based on inadequate medical care contains both an objective and a subjective component. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).

The objective component requires Plaintiff to establish a medical need posing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective component requires Plaintiff to show the Defendants acted with a sufficiently culpable state of mind, specifically deliberate indifference to a serious medical need. *Blackmore*, 390 F.3d at 895. "Deliberate indifference is characterized by obduracy or wantonness–it cannot be established on negligence, inadvertence, or good faith error." *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012). A defendant must be subjectively aware of facts from which the inference could be drawn that Plaintiff faced a substantial risk of serious harm, actually draw that inference, and then recklessly disregard the risk by failing to take reasonable measures to address it. *Farmer*, 511 U.S. at 837. Therefore, actual knowledge of serious medical needs, or of circumstances making the risk obvious, is essential to a finding of deliberate indifference. *Blackmore*, 390 F.3d at 896 (citing *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)).

The subjective inquiry is individualized as to each defendant, and the collective acts or knowledge of other defendants cannot be attributed to a particular defendant. *See Rhinehart v.*

*Scutt*, 894 F.3d 721, 738 (6th Cir. 2018); *Reilly*, 680 F.3d at 626-27. A medical provider is not deliberately indifferent merely because reasonable treatment ultimately proves unsuccessful or even harmful. *Rhinehart*, 894 F.3d at 738. A plaintiff's disagreement with the treatment received is insufficient to rise to the level of an Eighth Amendment violation. *Dodson v. Wilkinson*, 304 F. App'x 434, 440 (6th Cir. 2008). Where a prisoner has received some treatment for a medical need or condition, she must present evidence from which a reasonable jury could find that the treatment was "so woefully inadequate as to amount to no treatment at all." *Mitchell v. Hininger*, 553 F. App'x 602, 604-05 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

In this case, Defendants concede the objective prong is satisfied because colon cancer constitutes a serious medical need. (Doc. 70, at 13). Because the subjective component must be addressed individually, the Court below considers Plaintiff's claim against each Defendant separately. *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005).

*Travis Geahlen*

Defendant Geahlen was employed at CCNO as a Licensed Practical Nurse during Plaintiff's incarceration. *See e.g.* Doc. 67 at 248. Geahlen first encountered Plaintiff on April 14, the day after she began her sentence; she reported nausea, shaking, and vomiting associated with withdrawal. *Id.* at 312. Geahlen performed a physical examination and provided Gatorade and Zofran. *Id.* On April 21, Geahlen performed Plaintiff's admission medical screening, which included an abdominal examination documenting no abdominal distention. *Id.* at 202-03.

On April 29, Plaintiff complained to Geahlen of difficulty having a bowel movement. *Id.* at 248. Geahlen performed an abdominal examination documenting active bowel sounds in all four quadrants. *Id.* He continued her constipation treatment with Colace and Milk of Magnesia. *Id.* On

May 2, Geahlen evaluated Plaintiff after she submitted a Sick Call Slip stating that she had not had a bowel movement for two weeks. *Id.* at 334. Plaintiff reported 10/10 abdominal pain, although her abdomen was nondistended. *Id.* Geahlen ordered an abdominal x-ray and administered medication to address the constipation. *Id.* at 280. On May 10, Plaintiff again complained to Geahlen with abdominal pain and intermittent constipation. *Id.* at 272. This time, Geahlen noted slight abdominal distention and contacted CCNO Medical Director, who ordered another abdominal x-ray. *Id*. The following day, Plaintiff submitted another Sick Call Slip requesting a laxative rather than a stool softener. *Id.* at 323. Later that day, Geahlen received the radiology report from Plaintiff's x-ray. The report noted no evidence of obstruction or free air and concluded that Plaintiff had an "[u]nremarkable, nonobstructive bowel gas pattern." *Id.* at 376. This was Geahlen's final documented interaction with Plaintiff. *See id.*

Plaintiff identifies no evidence from which a reasonable jury could conclude Geahlen appreciated a substantial risk of serious harm and consciously disregarded it. Even viewing the evidence in Plaintiff's favor, including her testimony that she did not have a bowel movement at any point during her incarceration (Doc. 70-1, at 31, 43), Plaintiff points to no further complaints of abdominal pain or constipation after the X-ray that would have alerted Geahlen to a continuing or worsening medical risk. And Plaintiff points to no evidence that Geahlen ignored her complaints or consciously refused to address a known risk. To the extent Plaintiff contends Geahlen should have provided additional or different treatment, including obtaining a CT scan rather than the abdominal x-ray that was ordered (Doc. 73 at 26), a disagreement regarding the adequacy of medical treatment, without more, does not establish deliberate indifference. *See Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (explaining that, where a prisoner has received medical

attention and disputes the adequacy of treatment, courts generally will not second-guess medical judgments or constitutionalize claims sounding in state tort law).

Lastly, Plaintiff asserts Geahlen labeled her a "faker" and did not believe she was experiencing legitimate medical problems. (Doc. 70-1 at 48). When asked during her deposition whether any medical provider directly accused her of faking her symptoms, Plaintiff responded, "Not directly to me, but I think [Geahlen] felt that way." *Id.* This testimony evidence is insufficient to establish a question of fact regarding deliberate indifference. *Compare Jones v. Muskegon Cnty.*, 625 F.3d 935, 944-45 (6th Cir. 2010) (finding deliberate indifference where nurses believed an inmate was "faking it" and then ignored his medical requests for several months), *with Weaver v. Shadoan*, 340 F.3d 398, 411-12 (6th Cir. 2003) (holding that a belief that an inmate was faking his symptoms did not support an inference of deliberate indifference), *abrogated on other grounds as recognized by Grote v. Kenton Cnty.*, 85 F.4th 397, 409-10 (6th Cir. 2023). Here, Geahlen did not ignore Plaintiff's complaints, nor does Plaintiff point to evidence supporting her contention Geahlen believed she was faking her symptoms.

Even when viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could find Geahlen actually knew of and recklessly disregarded a substantial risk of serious harm. For the foregoing reasons, the Court grants summary judgment in favor of Geahlen on Plaintiff's Eighth Amendment claim.

*Thomas West*

Defendant Thomas West was employed as a Licensed Practical Nurse at CCNO during Plaintiff's incarceration. *See e.g.* Doc. 67 at 363. His first contact with Plaintiff occurred on April 15, after she submitted a Sick Call Slip reporting diarrhea for two days. *Id.* at 363. West gave her

medication to address the reported diarrhea. *Id.*[4] West next saw Plaintiff on April 28, when Plaintiff reported abdominal pain and no bowel movement for nine days. (Doc. 67, at 288). On examination, he noted tenderness in the left lower quadrant of her abdomen without distention and gave her medication to address the constipation. *Id.* On May 4, West documented Plaintiff was in the medical unit for abdominal pain, was resting, and denied any complaints or needs at that time. *Id.* at 221. West provided her ice chips and encouraged her to increase her fluid intake. *Id*. West's final documented contact with Plaintiff occurred on May 14, fifteen days before her release. He documented Plaintiff denied abdominal pain or other complaints and wanted to return to her unit. *Id.* at 215.

Plaintiff has not established a genuine dispute of material fact from which a reasonable jury could find West knew of and consciously disregarded a substantial risk of serious harm. West addressed each gastrointestinal complaint presented to him. *Id.* at 363, 288. Even assuming Plaintiff's first complaint was intended to convey that she was *not* having diarrhea, West responded to the complaint and administered medication. *Id.* at 363. When Plaintiff later reported abdominal pain and no bowel movement for nine days, West examined her and again provided medication consistent with his findings. *Id.* at 288. His subsequent encounters with Plaintiff in the medical unit likewise do not support a finding of deliberate indifference. Although Plaintiff asserts she complained to West on May 4 and that her complaints were generally ignored, (Doc. 73, at 8), the cited medical record states Plaintiff was housed in the medical unit for abdominal pain and a recent report of syncopal episodes, was resting, denied any complaints or needs at that time, and received ice chips and instructions to increase her fluid intake. (Doc. 67, at 221). Even viewing the evidence

4. Although Plaintiff testified her real problem was that she couldn't have diarrhea, she confirmed that she did, in fact, sign the sick call slip reporting diarrhea. *See* Doc. 70-1, at 65.

in Plaintiff's favor, West's documented responses to her complaints do not permit a reasonable jury to find that he actually appreciated a substantial risk of serious harm and consciously disregarded it. *Id.* at 363, 288, 221, 327, 215.

When viewing the evidence in the light most favorable to Plaintiff, no reasonable juror could find that West actually knew of and recklessly disregarded a substantial risk of serious harm. For the foregoing reasons, the Court grants summary judgment in favor of West on Plaintiff's Eighth Amendment claim.

*Brittani Heller*

Defendant Brittani Heller was employed at CCNO as a Nurse Practitioner during Plaintiff's incarceration. *See, e.g.*, Doc. 67 at 296. Heller's first relevant encounter with Plaintiff occurred on April 22, when she reviewed laboratory results obtained in connection with Plaintiff's reported diarrhea. (Doc. 67, at 296, 240-45). The results showed a potassium level of 3.2, and Plaintiff agreed to begin potassium medication. *Id.* On May 2, Heller documented Plaintiff yelled from her cell that she had a bowel movement, after which Heller cancelled the abdominal x-ray. *Id.* at 278. But again, Plaintiff denies telling any medical staff she had a bowel movement. (Doc. 70-1 at 43-44). Three days later, Heller examined Plaintiff while she was in the medical unit and documented her abdomen was soft with active bowel sounds. (Doc. 67, at 274). On May 11, Heller received Plaintiff's radiology report concerning her ongoing constipation complaints, which was unremarkable. *Id.* at 376; (Doc. 70-4, at 48). Heller's final encounter with Plaintiff occurred on May 16, when she examined Plaintiff to determine whether she could return to her unit. *Id.* at 262. The examination documented active bowel sounds, and Plaintiff was released to her unit. No further complaints were documented before her release. *See generally* Doc. 67.

Plaintiff fails to identify evidence from which a reasonable jury could find Heller subjectively recognized a substantial risk of serious harm and consciously disregarded it. The crux of Plaintiff's argument is that, although Heller "provided some care and treatment to Plaintiff, the lack of overall care shows a pattern and practice of deliberate indifference." (Doc. 73, at 25). Plaintiff's opposition brief further contends:

> Defendant Heller never followed up when Plaintiff continued to writhe in pain in her cell; she did not order a CT or have a specialist examine Plaintiff. Defendants knew Plaintiff was ill, they knew she needed additional medical care, and they knew no one followed up. No one cared about Plaintiff's well-being.

*Id.* at 28.

If supported by record evidence, these assertions might support an inference of deliberate indifference. But Plaintiff does not point to record evidence showing Heller knew Plaintiff continued to "writhe in pain," knew that a CT scan or specialist evaluation was medically necessary, or otherwise recognized an unresolved medical risk requiring additional treatment. Instead, Plaintiff asserts generally "Defendants knew" she needed additional medical care. *Id.* at 24, 26-28. Such collective allegations do not establish what Heller herself knew. *See Reilly*, 680 F.3d at 626 (explaining that the collective acts and knowledge of defendants cannot be ascribed to each individual defendant). Moreover, Heller received the May 11 abdominal x-ray results showing no obstruction or free air and an otherwise unremarkable bowel gas pattern. (Doc. 67, at 376). Heller testified the report contained nothing clinically significant and did not indicate follow-up care was necessary. (Doc. 70-4, at 48). Five days later, Heller examined Plaintiff again and documented active bowel sounds and no complaints of abdominal pain, nausea, or vomiting. (Doc. 67, at 262). Once again, Plaintiff submitted no further Sick-Call Slips concerning abdominal pain or constipation during the eighteen days between the May 11 x-ray and her release. *See generally* Doc. 67. On May 16, Heller examined Plaintiff, documented active bowel sounds and no

complaints of abdominal pain, nausea, or vomiting, and returned her to her unit. (Doc. 67, at 262). Accordingly, nothing in the record would permit a reasonable jury to infer that Heller recognized a continuing or worsening substantial risk.

Plaintiff also argues Heller should have ordered a CT scan or referred her to a specialist. (Doc. 73, at 28). But that argument challenges the adequacy of the medical care Heller provided, not whether Heller consciously disregarded a known substantial risk. Without more, a disagreement with the level of medical care provided does not establish deliberate indifference. *See Westlake*, 537 F.2d at 860 n.5. At most, Plaintiff contends Heller should have recognized the need for further testing, which is insufficient because deliberate indifference requires more than mere negligence. *Farmer*, 511 U.S. at 835, 839-40.

Even when viewing the evidence in the light most favorable to Plaintiff, no reasonable juror could find that Heller actually knew of and recklessly disregarded a substantial risk of serious harm. For the foregoing reasons, the Court grants summary judgment in favor of Heller on Plaintiff's Eighth Amendment claim.

*Rachel Smith*

Defendant Rachel Smith was employed at CCNO as a Licensed Practical Nurse during Plaintiff's incarceration. *See e.g.* Doc. 67 at 286. She had only two documented encounters with Plaintiff during her 46-day incarceration. The first occurred on April 29, when Plaintiff reported no bowel movement for ten days. *Id*. Smith's abdominal examination showed active bowel sounds in all four quadrants, no abdominal distention, and no tenderness. She administered two medications to treat Plaintiff's constipation, excused her from work, and allowed her to return to her unit. *Id.* The next day, Plaintiff reported no bowel movement for twelve days. *Id.* at 78. Smith again examined Plaintiff and documented active bowel sounds in all four quadrants, no abdominal

distention, and no tenderness with palpation. *Id.* Smith administered constipation medication and returned Plaintiff to her job in the kitchen. *Id.*

Nothing in the record identified by Plaintiff would permit a reasonable jury to find Smith subjectively appreciated a substantial risk of serious harm and consciously disregarded it. Plaintiff does not substantively address Smith in her Opposition to Summary Judgment. *See* Doc. 73. Smith is only mentioned twice, both times in the factual background, where Plaintiff merely recounts the two encounters Smith had with her. *Id.* at 12. Plaintiff offers no argument and identifies no evidence explaining how Smith's conduct satisfies the subjective component of deliberate indifference. *See id.* At summary judgment, the nonmoving party must identify affirmative evidence sufficient to permit a reasonable jury to return a verdict in her favor, and the Court is not required to search the record for evidence creating a genuine dispute on her behalf. *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404-06 (6th Cir. 1992). Moreover, the evidence shows Defendant's only two documented encounters with Plaintiff occurred on April 29 and April 30, days 17 and 18 of Plaintiff's 46-day incarceration, well before her release. (Doc. 67 at 286, 78). On both occasions, Smith evaluated Plaintiff's complaints and provided treatment consistent with her examination findings. *Id.* Nothing about either encounter, and nothing Plaintiff identifies in her Opposition, would permit a reasonable jury to infer that Smith actually recognized a substantial risk of serious harm and consciously disregarded it.

Even when viewing the evidence in the light most favorable to Plaintiff, no reasonable juror could find that Smith actually knew of and recklessly disregarded a substantial risk of serious

harm. For the foregoing reasons, the Court grants summary judgment in favor of Smith on Plaintiff's Eighth Amendment claim.[5]

*Monell Claim Against Southern Health Partners*

Plaintiff asserts a *Monell* claim against Defendant Southern Health Partners ("SHP"), a private correctional medical provider contracted to provide medical care at CCNO during Plaintiff's incarceration. (Doc. 12, at 15-17). Plaintiff contends SHP maintained a "well-settled" custom or practice under which "CCNO repeatedly ignored inmates' serious medical needs." (Doc. 73, at 30). She further alleges SHP "has a history of being cheap and providing little care to inmates." *Id.* As evidence of this alleged custom or practice, Plaintiff cites three prior lawsuits involving allegations of deficient medical care by SHP at CCNO. *Id.* at 17–18 (collecting cases).

A municipality may not be held liable under § 1983 solely for injuries inflicted by its employees or agents. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978). Rather, § 1983 permits liability only for the entity's own wrongdoing. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006). These same principles apply to a private entity who contracts to perform a traditional state function, such as providing medical care to inmates. *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993). Therefore, a private contractor may not be held liable under a theory of respondeat superior for the conduct of its employees; instead, Plaintiff must show the entity's own

5. The opinion of Plaintiff's expert, Dr. Goldstein, does not change the Court's conclusion as to any Defendant. Defendants concede the objective seriousness of Plaintiff's medical condition. (Doc. 66 at 13). Although Dr. Goldstein opines additional diagnostic testing should have been performed and that a CT scan would have revealed the obstruction and colon mass, the seriousness of Plaintiff's underlying condition is undisputed. (Doc. 73-2, at 4). His opinion addresses the adequacy of the medical care provided, not whether any particular Defendant subjectively recognized a substantial risk of serious harm. And failure to follow best medical practices does not, without more, establish deliberate indifference where the provider lacked subjective awareness of the serious underlying condition. *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 449 (6th Cir. 2014).

policy or custom caused the alleged constitutional deprivation. *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005).

To establish entity liability under § 1983, Plaintiff must show both (1) a deprivation of a constitutional right and (2) that the entity was responsible for that deprivation. *Doe v. Claiborne County*, 103 F.3d 495, 505-06 (6th Cir. 1996). Accordingly, liability exists only where a policy or custom caused the constitutional injury and there is a direct causal link between that policy or custom and the alleged deprivation. *Jones v. Muskegon County*, 625 F.3d 935, 946 (6th Cir. 2010). A plaintiff may establish the existence of such a policy or custom through (1) the entity's official policies or enactments; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal violations. *Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015).

Because Plaintiff has failed to establish an underlying Eighth Amendment violation, SHP cannot be held liable under § 1983. *Thomas v. City of Columbus*, 854 F.3d 361, 367 (6th Cir. 2017) ("No constitutional violation means no municipal liability."). Even assuming a constitutional violation occurred, Plaintiff fails to identify evidence of a SHP policy or custom that caused the alleged deprivation. In her opposition, Plaintiff cites three prior lawsuits involving allegations of inadequate medical care at CCNO. (Doc. 73, at 13-14). But the filing of a Complaint is not proof the allegations therein. And assuming those lawsuits could constitute evidence of three prior incidents of inadequate medical care, three instances are insufficient, without more, to establish a widespread, permanent, and well-settled custom. *See Jones*, 625 F.3d at 946-47 (holding that evidence of five incidents involving ignored inmate medical requests was insufficient to establish a widespread custom).

Accordingly, Plaintiff has failed to create a genuine dispute of material fact as to SHP's liability under *Monell*, and the Court grants summary judgment in favor of Southern Health Partners.

Motion to Strike

Plaintiff additionally moves to strike the portion of Defendants' expert report related to gastroenterology. (Doc. 60). Because the Court finds Defendants are entitled summary without reference to the challenged portion of the expert report, Plaintiff's Motion to Strike is denied as moot.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion for Summary Judgment (Docs. 66, 70) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Plaintiff's Motion to Strike Expert Testimony (Doc. 60) be, and the same hereby is, DENIED AS MOOT.

FURTHER ORDERED that Plaintiff's Motion for Leave to File a Sur-Reply (Doc. 75) be, and the same hereby is, DENIED.

s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: September 14, 2026